UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MICHAEL SWIGER,

Plaintiff,

v.

HAMMOND INDIANA POLICE DEPT., ANTHONY M. FERRARINI, JEFFERY N. MILLER, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and MARC O. ROCHON,

Defendants.

CAUSE NO. 2:25-CV-173-GSL-JEM

OPINION AND ORDER

Michael Swiger, a prisoner without a lawyer, filed a complaint. ECF 7. Under 28 U.S.C. § 1915A, the court must dismiss the complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint needs to contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he presents facts that preclude relief. *See*

*Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Swiger alleges officers from the Hammond Police Department (HPD) and/or special agents from the Department of Homeland Security (DHS) "planted" approximately 7.3 grams of methamphetamine at his former residence while executing a search warrant there on April 5, 2022. ECF 7 at 2. He claims, "As a consequence of the planting of 7.3 grams of suspected methamphetamine on 4-5-2022, three federal superseding indictments were brought against me as counts 3 and 4 in the matter of 2.22.CR.38 . . .. Those counts were eventually severed from the original indictment and dismissed by this court on 2-18-2025." *Id.* at 5.

As relevant background information, the court notes the federal criminal case referenced above was initiated by way of a criminal complaint filed on April 6, 2022. *See United States v. Swiger*, cause no. 2:22-CR-038-GSL-JEM (N.D. Ind. filed Apr. 6, 2022), at ECF 1.[1] The complaint listed the sole offense charged as distribution of child pornography pursuant to 18 U.S.C. § 2252(a)(2). *Id.* An affidavit attached to that complaint, authored by Special Agent Marc Rochon, described the DHS's investigation of Swiger, which began as part of an "on-going dark web narcotics investigation." *Id.* On April 4, 2022, Swiger allegedly distributed child pornography over the internet to an undercover agent, prompting the search of Swiger's residence on April 5, 2022, during which "7.3 grams of methamphetamine, various handguns and rifles, and several

[1] The court is permitted to take judicial notice of public records at the pleading stage. *See* Fed. R. Evid. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647 (7th Cir. 2018).

computer devices were seized from the home." *Id.*[2] Swiger was arrested by the HPD on April 5, 2022, and placed on a 48-hour hold in state custody. *Id.*

The next day, a federal arrest warrant was issued and executed, plus an initial appearance was held via video conference by the magistrate judge. *See id.* at ECFs 2–6. The original grand jury indictment, which was filed on April 20, 2022, charged Swiger with one count of distribution of child pornography pursuant to 18 U.S.C. § 2252(a)(2) (Count One) and one count of possession of child pornography pursuant to 18 U.S.C. § 2252(a)(4)(B) (Count Two). *See id.* at ECF 10. An arraignment hearing was held on April 28, 2022, after which Swiger was remanded to the custody of the U.S. Marshal. *See id.* at ECF 15. The formal detention hearing began on May 10, 2022, and concluded on May 19, 2022, when the court ordered that Swiger was to be held without bond pending trial. *See id.* at ECFs 17, 23, & 24.

On May 17, 2023, more than a year later, the superseding indictment was issued which added one count of unlawful possession of a firearm pursuant to 18 U.S.C. § 922(g)(3) (Count Three) and one count of simple possession of methamphetamine pursuant to 21 U.S.C. § 844(a) (Count Four) based on the items seized during the April 5th search. *See id.* at ECF 51; *see also id.* at ECF 82 & ECF 136 (second and third superseding indictments). The arraignment for the superseding indictment was held on June 8, 2023, and Swiger was again remanded to the custody of the U.S. Marshal. *See id.*

---

[2] The affidavit indicates that officers from the HPD Drug Unit executed the state search warrant based on information provided to them by Special Agent Rochon.

at ECF 57. On November 8, 2024, the court granted Swiger's motion to sever the gun and drug counts from the child pornography counts. *See id*. at ECF 156.

The three-day jury trial on the child pornography counts began on December 10, 2024, and concluded on December 12, 2024. *See id*. at ECFs 196, 199, 203. Swiger was found guilty of Count One and Count Two—distribution and possession of child pornography. *See id*. at ECF 203 & ECF 205. The government filed a motion to dismiss the remaining gun and drug counts, Count Three and Count Four, on February 18, 2025, and the court granted the motion the same day. *See id*. at ECF 216 & ECF 217. On September 25, 2025, Swiger was sentenced to 242 months on Count One and 22 months on Count Two, to be served consecutively for a total term of 262 months of imprisonment *See id*. at ECF 328. Swiger filed a notice of appeal on September 29, 2025. *See id*. at ECF 333. That appeal remains pending as of the date of this order.

In support of his current civil rights claims, Swiger attaches a series of photos to his complaint purportedly showing drug scales found in his house both with and without drug residue on them. He also includes two photographs that show "a rectangular box containing white in color crystalline substance allegedly discovered during the search which field tested positive for methamphetamine according to HPD Detective Sergeant Jeffery N. Miller who collected and inventoried the substance." ECF 7 at 2. He asserts:

> The appearance of suspected methamphetamine on the scale's round metallic weighing platform in the 4th photograph of the digital scale where nothing had been in the first 3 photographs of the digital scale chronologically establishes that the 7.3 grams of suspected

> methamphetamine did not appear inside my house until AFTER law enforcement arrived on the morning of 4-5-2022.

*Id*. at 3.

In addition, Swiger alleges a K-9 handler from the HPD named Sergeant Enrique Cook "employed" his K-9 to conduct an "inspection of the curtilage of my house" including the home's "threshold of the entry door." *Id*. Swiger claims the K-9 "yielded negative results." *Id*. He asserts Sergeant Cook testified at the federal criminal trial that he didn't employ his K-9 which is "wholly incongruent with body and dash camera recordings" according to Swiger. *Id*.

Finally, Swiger seems to imply that Special Agent Rochon was the one to plant the drugs. He states, "During trial DHS Special Agent Marc O. Rochon (SA Rochon) testified that he was physically inside of my house during the search but that he was not part of the search team. This of course begs the question of what exactly was SA Rochin doing inside of my house on the morning of 4-5-2022?" *Id*. at 5. Swiger has sued the Hammond Indiana Police Department, the United States Department of Homeland Security, Detective Sergeant Jeffery N. Miller, Detective Sergeant Anthony M. Ferrarini, and Special Agent Marc O. Rochon for monetary damages.

As an initial matter, neither the HPD nor the DHS can be sued for monetary damages in this type of case. The HPD is a non-suable entity per Indiana and Seventh Circuit law. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued."). Likewise, the DHS, as a federal agency, can't be sued under 42 U.S.C.

§ 1983 and is protected by sovereign immunity from damages claims brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See, e.g.*, *Egbert v. Boule*, 596 U.S. 482, 498 (2022) (*Bivens* "is concerned solely with deterring the unconstitutional acts of individual officers") (citation omitted)); *F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994) (*Bivens* actions cannot be brought against a federal agency).

Regarding the individual defendants, Swiger alleges they planted the drugs seized from his house during the April 5th warranted search—essentially, he says they fabricated evidence that was later used to bring federal criminal charges against him. He can't sue Agent Rochon on these grounds because a fabrication of evidence claim is meaningfully different than any of the *Bivens* claims recognized by the Supreme Court. *See Egbert*, 596 U.S. at 492 (reiterating that extending *Bivens* actions to new contexts, especially if Congress is better suited to better create a damages remedy, is disfavored); *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); *Ziglar v. Abbasi*, 582 U.S. 120, 139–40 (2017) (describing ways in which facts create meaningful differences).[3] As for the remaining defendants, it's not clear from the face of the complaint what theory Swiger intends to proceed on, so the court will analyze the possibilities separately.

---

[3] Even if some sort of *Bivens* claim could be parsed from Swiger's complaint, it would fail for the same reasons set forth below.

*Fourth Amendment – Search/Seizure*

Unreasonable searches and seizures are prohibited by the Fourth Amendment. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021). However, the existence of probable cause is a bar to these types of claims:

> Probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred. This is not a high bar. It is assessed objectively based on the conclusions that the arresting officer reasonably might have drawn from the information known to him.

*Id*. (brackets, internal quotation marks and citations omitted). In this case, publicly available court records from the federal criminal matter make it clear there was probable cause to search Swiger's residence on April 5, 2022. *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 1 (criminal complaint and affidavit describing pre-April 5th undercover investigation of Swiger regarding drugs and distribution of child pornography). Thus, to the extent Swiger is claiming the initial search of his residence was unconstitutional, that claim fails.

Furthermore, Fourth Amendment claims based on allegations of an unlawful search and/or seizure are subject to a two-year statute of limitations in Indiana and generally accrue at the time of that search or seizure. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016); *see also Kunkle v. Holcomb, et al.*, No. 24-2712, 2026 WL 3153201, at *2 (7th Cir. Oct. 21, 2026). Here, Swiger's residence was searched and the allegedly planted drugs were seized on April 5, 2022, but Swiger did not file his original complaint until April 7, 2025. *See* ECF 1 at 1 (complaint signed on April 7, 2025, and

docketed on April 14, 2025). Therefore, such claims are untimely.[4] *See*, *e.g.*, *Flynn v. Donnelly*, 793 Fed. Appx. 431, 434 (7th Cir. 2019) (affirming dismissal of plaintiff's Fourth Amendment unlawful search and seizure claims because they accrued "at the time of that search or seizure").

Similarly, to the extent Swiger is attempting to assert the HPD officers falsely arrested him on April 5, 2022, and seized him pursuant to a meritless 48-hour hold, that claim is also time-barred. The statute of limitations for pure false arrest claims accrues when the arrestee is detained by way of legal process. *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal

---

[4] Although the statute of limitations is an affirmative defense, dismissal at the screening stage is appropriate when it is clear from the face of the complaint that the claim is untimely. *See Chicago Bldg. Design, P.C. v. Mongolian H., Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Equitable tolling can sometimes apply to stop the statute of limitations clock, but "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Those circumstances must be both extraordinary and beyond the litigant's control. *Menominee Indian Tribe of Wisconsin v. U.S.*, 577 U.S. 250, 257 (2016).

Equitable tolling does not apply in this case. Assuming the drugs were planted as Swiger asserts, the HPD recovered them on April 5, 2022, the day of the search. His initial appearance before the magistrate was held the next day. At the detention hearing on May 10, 2022, during which Swiger was present via video conference, the government discussed the investigation and noted that "[w]hen he was arrested, he was found with seven grams -- I believe seven grams of methamphetamine along with some firearms in his home." *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 70, p. 4. Nothing indicates Swiger was prevented from pursuing his claims about the allegedly unlawful search/seizure. In fact, it's abundantly clear he was able to communicate with the court(s) throughout his detention, as Swiger himself—despite having counsel most of that time—continuously and repeatedly sent numerous *pro se* letters, motions, and documents directly to the court in his criminal case between October 19, 2022, and February 17, 2026. *See id.* at ECFs 34, 40, 46, 56, 58, 60, 61, 63, 66, 72, 73, 76, 91, 96, 97, 102, 106, 112, 129, 130, 164, 165, 207, 210, 213, 225, 229, 231, 233, 236, 239, 240, 241, 244, 245, 246, 247, 253, 255, 259, 260, 271, 273, 276, 278, 279, 280, 281, 282, 286, 288, 289, 292, 293, 294, 295, 296, 300, 301, 302, 340, 342, 343, and 345. During that time, he was also found to be competent. *See id.* at ECFs 87, 88, 267. Although Swiger chose not to initiate a civil rights case as to any pure Fourth Amendment search/seizure/false arrest claims before the statute of limitations expired, the record demonstrates this is not a situation where equitable tolling would apply. *See Menominee Indian Tribe of Wisconsin*, 577 U.S. at 257 (circumstances must be both extraordinary and beyond the litigant's control).

process"); *see also McDonough v. Smith*, 588 U.S. 109, 122 (2019) ("A false-arrest claim, *Wallace* explained, has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences."). In this matter, Swiger was arrested following the search on April 5, 2022, and he appeared before the magistrate for his initial appearance in the federal child pornography case the next day. *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECFs 2–6. Therefore, any claim of pre-process seizure/false arrest by the HPD that may be discerned in his complaint was filed a year too late. *See, e.g., Kirkpatrick v. Cnty. of Williamson*, No. 23-2099, 2025 WL 879689, at *3 (7th Cir. Mar. 21, 2025) (affirming dismissal of plaintiff's complaint for various reasons including untimeliness of her "claims alleging the unlawfulness of the search, the arrest, and the seizure of her property" because "these claims accrued at the time of the allegedly unlawful conduct").[5]

*Fourth Amendment – Unlawful Pretrial Detention*

Swiger may also be alleging his post-process pretrial detention was unlawful. To proceed on such a claim, which arises under the Fourth Amendment and is sometimes referred to as a malicious prosecution claim, a plaintiff must allege "a government official charged him without probable cause, leading to an unreasonable seizure of his

---

[5] The *Kirkpatrick* court distinguished the plaintiff's malicious prosecution, fabrication of evidence, and due process claims as being timely because they did not accrue until the underlying criminal proceedings had been resolved in her favor; however, the dismissal of those claims was also affirmed because they were not sufficiently pled. *Kirkpatrick*, 2025 WL 879689, at *3; *see also DeLarosa v. Village of Romeoville*, No. 24-1715, 2024 WL 4523808, at *2 (7th Cir. Oct. 18, 2024) (differentiating between plaintiff's Fourth Amendment unreasonable search and seizure claims that were time-barred from his malicious prosecution claims that were timely).

person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43, n.2 (2022)); *see also Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020) (citing *Lewis v. City of Chicago*, 914 F.3d 472, 476–78 (7th Cir. 2019)).[6] A Fourth Amendment unlawful detention claim based on fabrication of evidence is only viable when the underlying criminal case ended in a "favorable termination" for the plaintiff. *Thompson*, 596 U.S. at 44. This favorable termination requirement is important because:

> (i) it avoids parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt; (ii) it precludes inconsistent civil and criminal judgments where a claimant could succeed in the tort action after having been convicted in the criminal case; and (iii) it prevents civil suits from being improperly used as collateral attacks on criminal proceedings.

*Id*. (citing *Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994)). To establish a favorable termination for this type of claim, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Id*. at 49. The essence is that an individual can't be held in custody if there isn't sufficient probable cause to support the detention because "[t]he Fourth Amendment establishes the minimum constitutional standards and procedures not just for arrest but also for ensuing detention." *Mack v. City of Chicago*, 151 F.4th 887, 895 (7th Cir. 2025) (internal quotation marks omitted). Thus, for

---

[6] A fabrication of evidence challenge can implicate different constitutional protections. *See Zambrano v. City of Joliet*, 141 F.4th 828, 830 (7th Cir. 2025) ("A claim for a false arrest or pretrial detention based on fabricated evidence implicates the Fourth Amendment protection against seizures without probable cause, whereas a claim that fabricated evidence was later used at trial to obtain a conviction violates a defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments.") (citing *Patrick v. City of Chicago*, 974 F.3d 824, 834–35 (7th Cir. 2020)). Swiger's Fourth Amendment unlawful pretrial detention claim will be discussed in this section, while the possible Fourteenth Amendment due process fabrication of evidence claim will be addressed in the next section.

example, a post-process pretrial detention is unlawful if "a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* (quoting *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)). As noted above, probable cause exists if the totality of the facts and circumstances would warrant a "reasonable, prudent person" to believe a crime had been committed. *Id.* (quoting *Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024)).

Here, Swiger claims that "[a]s a consequence of the planting of 7.3 grams of suspected methamphetamine on 4-5-2022, three federal superseding indictments were brought against me as counts 3 and 4 in the matter of 2.22.CR.38 . . .." ECF 7 at 5. Based on this language, it appears Swiger is challenging the detention related specifically to the drug charges filed on May 17, 2023, and continuing through February 18, 2025, when those charges were voluntarily dismissed by the government. *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 51 (superseding indictment charging Count Three as unlawful possession of a firearm "knowing he was an unlawful user of a controlled substance" and Count Four as simple possession of methamphetamine) and ECFs 216 & 217. Taking Swiger's allegations at face value, this claim is timely. *See Lewis*, 914 F.3d at 474 (claim "accrues on the date the detention ends").

The problem for Swiger is that these new charges didn't cause any sort of additional pre-trial detention because he was *already* being lawfully detained on the child pornography charges. It is undisputed that he was continuously detained on the child pornography charges from the day the complaint was filed and the initial appearance was held on April 6, 2022, to the day he was found guilty of those charges

following a jury trial on December 12, 2024. *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 203. Then, he remained in custody on those child pornography charges (of which he was found guilty) until he was sentenced to two-hundred-sixty-two months of imprisonment on September 25, 2025. *See id.*, at ECF 328. The fact that the drug-related charges were brought and ultimately dismissed in the middle of that timeframe isn't sufficient to create a standalone violation. *See Chiaverini*, 602 U.S. at 561, 564 (explaining that, while "the presence of probable cause for one charge does not *automatically* defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge," this type of claim still involves an element of causation and "depends not just on an unsupported charge, but on that charge's *causing a seizure*") (emphasis added);[7] *see also Ash v. City of Aurora*, No. 24-2774, 2026 WL 446968, at *2 (7th Cir. Feb. 17, 2026) (To bring a Fourth Amendment post-process unlawful detention claim, a plaintiff must "establish a seizure of his person after the legal process began.") (quoting *Neita v. City of Chicago*, 148 F.4th 916, 939 (7th Cir. 2025)).

Moreover, Swiger doesn't claim—nor could he without running afoul of *Heck* concerns as will be explained in more detail below—that the child pornography charges were instituted and continued after legal process without probable cause. Even putting the evidence of the allegedly planted drugs aside, the following facts described in the federal criminal complaint provided sufficient independent probable cause to have

[7] The *Chiaverini* court left the "test" for determining causation an open question, but the fact that some type of causation must be shown to state a claim is undisputed. *Chiaverini*, 602 U.S. at 565.

detained him on the child pornography charges: (1) an undercover agent from HSI began investigating an individual, who originally called himself Michael Johns, in January 2022 based on chats he was having with the agent on the instant-messaging app KIK; (2) those chats involved both buying drugs on the Dark Web and discussing things that were sexual in nature (*e.g.*, the individual stated he was interested having sex with underage girls); (3) the undercover agent contacted Special Agent Rochon of the HSI Hammond Indiana Group on March 23, 2022, to ask for his assistance in identifying the subject he had been chatting with; (4) based on profile pictures the individual had sent the undercover agent from his KIK account, Special Agent Rochon used facial recognition software to help determine a possible match to Swiger who resided at 6730 Huron Avenue in Hammond, IN; (5) Special Agent Rochon provided that information to officers at the Hammond Police Department Drug Unit who—having been to that residence in the past when Swiger had overdosed on drugs—were able to identify the KIK profile pictures as Swiger and were able to also identify the inside of Swiger's residence based on a video Swiger sent to the undercover agent on March 27, 2022, in which Swiger's face could be seen; (6) on March 27, 2022, the undercover agent received a message from Swiger in which he clarified that he had two KIK accounts and that his real name was Michael Swiger; (7) on April 4, 2022, Swiger sent a video to the undercover agent from his residence in Hammond, IN, appearing to depict a minor engaging in sexually explicit conduct; and (8) a search of that residence was conducted the next day, during which "several computer devices were seized from the home" that were later subjected to a digital forensic analysis revealing child pornography. *See*

*Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 1 (complaint and affidavit in support of arrest warrant). The indictment was subsequently filed, charging Swiger with distribution and possession of child pornography.

After reviewing the information in the complaint, the indictment, and the pretrial bond report, the detention order issued by the magistrate judge on May 19, 2022, ordered Swiger detained based on the "Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)" for "an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425," and it did not mention the possession of narcotics as being the reason for the detention. *See Swiger,* cause no. 2:22-CR-038-GSL-JEM, at ECF 24. Thus, it's clear that the allegedly planted drugs alone did not cause or result in an unconstitutional detention/seizure. *See, e.g., Washington v. City of Chicago*, 98 F.4th 860, 873 (7th Cir. 2024) (if false statements, misleading omissions, and/or fabricated evidence are set aside and the remaining evidence is still sufficient to support probable cause, there is no Fourth Amendment unlawful detention violation); *Barnett v. City of Chicago*, No. 23-2509, 2025 WL 1122049, at *3 (7th Cir. Apr. 16, 2025), *reh'g denied*, No. 23-2509, 2025 WL 1401284 (7th Cir. May 14, 2025) (omitting allegedly false statements and finding enough evidence to support probable cause as a matter of law because "probable cause demands much less than proof beyond a reasonable doubt") (quoting *Washingto*, 98 F.4th at 876)); *United States v. Angle*, 234 F.3d 326, 335 (7th Cir. 2000) (rejecting claim that government did not have probable cause of child pornography crimes based on agent's search warrant affidavit).

*Fourteenth Amendment Due Process – Fabrication of Evidence*

Finally, although Swiger doesn't directly mention the child pornography charges in his complaint, it can be inferred that he is also claiming the allegedly planted drugs violated his rights because they were used as evidence against him during his trial. "Obviously, law enforcement officers may not knowingly use false evidence, including false testimony, to obtain a tainted conviction." *Mack v. City of Chicago*, 151 F.4th 887, 897 (7th Cir. 2025) (internal quotation marks and citation omitted). For this type of Fourteenth Amendment due process claim, a plaintiff must show: (1) the defendants "knowingly fabricated evidence that was used against him at trial;" (2) the fabricated evidence was "material;" and (3) the plaintiff was "damaged as a result." *Id.* at 899; *see also* Fed. Civ. Jury Instructions 7th Cir. § 7.14 (2017).[8] Evidence is material if "there is a reasonable likelihood the evidence affected the judgment of the jury." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). "[I]f the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty." *Id.*

[8] To the extent Swiger is attempting to bring a due process fabrication of evidence claim related to the drug-charges themselves, he may not do so because those charges were ultimately dismissed. *See Mack*, 151 F.4th at 899 ("Mack's due process claim cannot prevail for the simple reason that he was acquitted. The essence of a due-process evidence-fabrication claim is that the accused was *convicted and imprisoned* based on knowingly falsified evidence. Here, the jury did not convict Mack of any crimes, and Mack has not alleged any post-trial deprivation of liberty. Because he was not damaged by the admission of any evidence, Mack's Fourteenth Amendment argument fails.") (internal quotation mark, brackets, and citation omitted). Thus, those claims are best analyzed under the Fourth Amendment as explained above.

In assessing whether Swiger has plausibly alleged the fabricated drug evidence was material to his conviction, the *Heck* doctrine springs into play. *In Savory v. Cannon*, 947 F.3d 409, 414–18 (7th Cir. 2020), the Court outlined the history of *Heck v. Humphrey*, 512 U.S. 477 (1994) as applied to unlawful detention, malicious prosecution, and due process fabrication of evidence claims. Plainly stated, *Heck* holds that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Savory*, 947 U.S. at 415 (quoting *Heck*, 512 U.S. at 486–87). Regarding a due process fabrication of evidence claim in particular, the Supreme Court recently held that it "does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 588 U.S. 109, 114 (2019).

Looking to the nature of Swiger's due process claim (to the extent he is asserting one), the gist is that the police officers planted the drugs in his residence and later used

them as evidence during his child pornography case. While Swiger's complaint doesn't expand upon that use—or even acknowledge the child pornography charges—the publicly available court record makes it clear that the government used the drugs found at Swiger's residence to help prove his identity and tie him to the child pornography sent to the undercover agent. The drugs were the subject of numerous pre-trial motions and hearings. *See Swiger*, cause no. 2:22-CR-038-GSL-JEM, at ECF 149 (gov't notice to admit drug evidence under FRE 404(b) to establish identity, motive, and location);[9] ECF 155 (def't motion in limine to exclude evidence of drugs and guns found during the search of the residence); ECF 160 (def't response in opposition to gov't 404(b) notice), ECF 161 (gov't response to def't motion in limine); ECF 166 (def't reply in support of his motion in limine); ECF 168 (gov't 404(b) reply);[10] ECF 220 (transcript of final pretrial

---

[9] "Of particular importance to identity, the UC was sent a photo of the meth Defendant intended to deliver on April 4, 2022 *just a few hours before the child pornography videos were sent through the same account*. That purported meth, contained in the same container, was found in Defendant's home the next day on April 5, 2022. Presenting this evidence of Defendant's efforts to provide drugs to the UC thus makes it more likely that he is also the person who sent the child pornography and therefore this evidence is relevant through a non-propensity chain of reasoning. . . . Defendant's sending of the child pornography videos and subsequent discussion of his sexual relationship with that minor (whether real or imaginary) was motivated by his hope to interest the UC in meeting up with him to share drugs and have sex. . . . While not dispositive on its own, finding the drugs on April 5, 2022 in the Northern District of Indiana is evidence that tends to show its more likely than not that the photo of the same drugs taken on April 4, 2022 *was also* taken within the District and, therefore, further circumstantial evidence that Defendant was in the district when he also sent the child pornography on April 4, 2022." ECF 149 at 8–10 (emphasis in original).

[10] "The fact is that the discussions of the procurement of drugs is some of the best evidence to tie the Kik account to Defendant on April 4, 2022, when the child pornography was sent from the Kik account. As already described in prior filings, Defendant's discussion of and procurement of purported methamphetamine leading up to sending a photo of purported methamphetamine on April 4, 2022, and the discovery of similar methamphetamine in a similar container the next day, makes it more likely Defendant was the user of the Kik account on April 4, 2022, when the child pornography was sent. This makes the evidence relevant to a key question. . . . This evidence may not prove dispositively Defendant was at his residence on April 4, 2022, when he also sent the child pornography, but it makes it more likely, and that is the **only standard** the Government has to meet at this stage." ECF 168 at 4–5 (bold in original).

conference held on Nov. 21, 2024, during which parties argued their positions about the drug evidence); ECF 221 (transcript of jury trial day 1 on Dec. 10, 2024, during which the court discussed the 404(b) rulings and explained what drug evidence would be allowed in).[11] Ultimately, although limited in scope, evidence of the drugs—including messages about and photographs of the drugs sent by Swiger to the undercover agent plus photographs of the drugs found at Swiger's residence during the search—*was* allowed in at the child pornography trial to help establish Swiger's identity, location, and/or motive. *See id*. at ECF 222 (transcript of jury trial day 2 on Dec. 11, 2024).[12] The government focused on the drugs during its closing argument as an important factor in identifying Swiger; conversely, defense counsel insisted they had not met their burden in doing so. *See id*. at ECF 223 (transcript of jury trial day 3 on Dec. 12, 2024).[13]

---

[11] "MR. MCGRATH: Understood, Your Honor. I can certainly work with that. If I misunderstood, I apologize. The only other thing I would need to know is would the context of the picture of the drugs – I'd like to be able to show at least one or two that says, 'I am getting these drugs so we can get together later,' and here's a picture of it. THE COURT: Is that the same picture of some of the items, then, that were discovered in that home? MR. MCGRATH: Correct. THE COURT: I understand that ruling -- defense, tell me if I'm wrong or misunderstood what my ruling is -- I think I already said that's fine, that's appropriate. I found that direct nexus between those." ECF 221 at 315; *see also id*. at 10–18 (discussing appropriateness of entering chats about drugs into evidence).

[12] Specifically, testimony and associated exhibits of HSI Agent Scott Beagle (pp. 85–97), testimony and associated exhibits of HPD Officer Enrique Cook (pp. 121–126, 132–133), testimony and associated exhibits of HPD Sergeant Jeff Miller (pp. 145–160), testimony and associated exhibits of Detective Sergeant Anthony Ferrarini (pp. 162–166, 172–174), testimony and associated exhibits of DHS Special Agent Marc Rochon (pp. 224–227, 268–271); *see also* gov't opening statement (pp. 35–36).

[13] In its closing statement, the government stated, "Did Michael Swiger knowingly distribute the child pornography? Was Michael Swiger the user of the Michael Johns Kik app when that application sent the undercover officer a video and told the undercover officer they were of a 12-year-old? Well, you have a lot of evidence here to conclude that he did. You have the photos that were sent from the three accounts. You have the photo of drugs -- of a crystalline substance, purported to be drugs, taken the same day the child pornography video was sent found in the bedroom and on the phone. You have the videos sent from the three accounts, and you have the actual, identical child pornography videos found on the phone that was taken from Michael Swiger's person. You have more child pornography found on the laptop. You have his own words. The photographs of that crystalline substance in Exhibit 2-A that

The fiercely contested nature of the identity issue—and the government's use of the drug evidence to link Swiger's physical presence at the residence to the digital persona who sent the child pornography to the undercover agent—establish that the allegedly fabricated drug evidence was material to Swiger's child pornography criminal conviction. As such, accepting Swiger's assertion that the drugs were not his—but were instead *planted* by the officers—is inherently contradictory to the integrity of the identity evidence used against him at trial. Such a contradiction would undermine the evidentiary foundation of his conviction and imply its invalidity. Accordingly, the due process fabrication of evidence claim must be dismissed without prejudice as *Heck* barred unless or until Swiger demonstrates that the conviction or sentence has been invalidated. *See, e.g., Savory*, 947 F.3d at 417 (plaintiff claimed the defendants fabricated evidence, but the Court held, "There is no logical way to reconcile those claims with a valid conviction."); *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.").[14]

---

Armyman121983 sent April, you can compare that with Exhibit 17-C that was found in Michael Swiger's bedroom." (pp. 44–45).

Defense counsel disputed those contentions regarding identity during his closing statement, "The government just got up and told you that they met their burden that it was Mike Swiger who did that. None of the witnesses support that. Dena asked you yesterday to take a close look at the evidence. None of the evidence actually supports that. The undercover officer says that he's texting with somebody. He wasn't able to identify Mike as the person he was texting. He doesn't know who sent those messages on April 4. Is it possible that Mike was sending the messages earlier? It's possible. But possible doesn't get you to beyond a reasonable doubt." (p. 48).

[14] As of the date of this order, Swiger's conviction stands, as his appeal is ongoing. *See Swiger v. United States*, cause no. 25-2723 (7th Cir. filed Sept. 30, 2025).

The court notes that Swiger could potentially attempt to assert that the drug evidence wasn't material to the child pornography conviction. However, in doing so, he would plead himself out of court. *Mack*, 151 F.4th at 899 (in order to state a viable due process fabrication of evidence claim, plaintiff must allege the fabricated evidence used against him was material). In essence, Swiger is stuck in a Catch 22—if he is claiming the allegedly planted drugs were material to the decision to convict him of the child pornography charges, they are barred by *Heck*. If, on the other hand, he is claiming that the drug evidence was unrelated and immaterial to the child pornography charges, he hasn't established the alleged fabrication of that evidence caused any sort of due process violation. Either way, his complaint fails. *See Morgan v. Schott*, 914 F.3d 1115, 1122 (7th Cir. 2019) ("The favorable-termination rule [in *Heck*] is more than a procedural hurdle that plaintiffs can skirt with artful complaint drafting . . .. Rather, it is grounded in substantive concerns about allowing conflicting judgments."). If, in the future, Swiger's federal conviction is set aside, overturned, or otherwise drawn into question, his claims may become cognizable. At this stage, however, they must be dismissed without prejudice.

The complaint does not state a claim upon which relief can be granted. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons explained above in detail,

such is the case here. *See Edwards*, 478 F.3d at 830 (7th Cir. 2007) and *McCready*, 453 F.3d at 888 (a plaintiff can plead himself out of court if he presents facts that preclude relief).[15]

For these reasons, the court:

(1) DENIES the motion to amend (ECF 50);

(2) DISMISSES the Fourth Amendment claims in the amended complaint (ECF 7) pursuant to 28 U.S.C. § 1915A because the allegations fail to state a claim upon which relief can be granted;

(3) DISMISSES WITHOUT PREJUDICE the Fourteenth Amendment Due Process claims (ECF 7) that are incompatible with the plaintiff's outstanding child pornography conviction; and

(4) DIRECTS the clerk to close the case.

SO ORDERED on November 23, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT

---

[15] Swiger recently filed a motion to amend in order to "remedy an issue with the quality of the photographs submitted with the amended complaint and subsequently uploaded onto the docket." ECF 50 at 1. While the court agrees the quality of the docketed photographs is poor, they were not used to analyze the claims presented in the complaint, so adding them now would be both unnecessary and futile. He also wants to amend his complaint to include additional "documents and records" regarding the drugs. *Id*. at 2. However, as explained above, such information is either: (1) not relevant to a Fourth Amendment pretrial detention claim because it didn't cause an additional seizure after he was already being properly held on the child pornography charges; or (2) intertwined with the drug evidence presented at the child pornography trial such that finding it was fabricated would necessarily imply the invalidity of that conviction, rendering his claim *Heck* barred. Thus, allowing Swiger to amend his complaint would be futile, so the motion will be denied.